**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**RANDALL LEE and OKEY GRIMM, On**
**Behalf of Themselves and All Others**
**Similarly Situated,**

**Plaintiffs,**                                    **No. 1:13-cv-01219-KG-SCY**

**V.**                                               **JURY TRIAL DEMANDED**

**DISH NETWORK, L.L.C. and**
**STOCKTON**
**TELECOMMUNICATIONS, INC.**

**Defendants.**

## <u>PRETRIAL ORDER</u>

    This matter is before the Court pursuant to Fed. R. Civ. P. 16.  The parties conferred and

submit the following Pretrial Order.

## <u>I.  APPEARANCES</u>

Attorneys who will try this action:

| | |
|---|---|
| For Plaintiffs | David W. Hodges |
| | Don J. Foty |
| For Defendant | Mark A. Weitz |
| | Paul N. Jones |

## <u>II.  JURISDICTION AND RELIEF SOUGHT</u>

**A.**     **Subject Matter Jurisdiction.**

    **1.**     **Was this action removed or transferred from another forum?** <u>X</u> Yes ___ No

If yes, was the action removed or transferred?

_____ Removed          ___X___ Transferred          _____ Original forum

**2.      Is subject matter jurisdiction of this Court contested?**

____X___ Uncontested          _____ Contested          _____ Party contesting

**3.      Asserted basis for jurisdiction.**

___X____ Federal Question          _____ Diversity          _____ Other

Statutory Provision(s) Invoked:  29 U.S.C. § 216(b)_____

**B.      Personal Jurisdiction and Venue.**

**1.      Is personal jurisdiction contested?**

__X____ Uncontested          _____ Contested

Identify the party contesting personal jurisdiction and basis for objection:

_____

**2.      Is venue contested?**

__X____ Uncontested          _____ Contested          _____ Party Contesting

Identify the party contesting personal jurisdiction and basis for objection:

_____

**C.      Are the proper parties before the Court?**

__X____ Uncontested          _____ Contested

If contested, identify each missing party or improper party and the basis for contention:

_____

**D.      Identify the affirmative relief sought in this action.**

1.      Plaintiffs seeks: unpaid overtime, unpaid minimum wage, liquidated damages, attorneys' fees, costs, and expenses.

2.      Defendant seeks:  Defendant seeks no affirmative relief.

### III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

**A.     Plaintiffs' claims:**

Plaintiffs contend that Defendant Stockton Telecommunications, Inc. willfully violated the FLSA's provisions governing overtime and minimum wage compensation by misclassifying its technician workforce as independent contractors.  Specifically, Plaintiffs contend that during the three year period preceding the filing of this action and continuing through the present, Defendant violated the provisions of 29 U.S.C. § 206 by paying the Plaintiffs and Class Members at rates less than the minimum hourly rates required by 29 U.S.C. § 206.  Furthermore, Plaintiffs contend that during the three years preceding the filing of this lawsuit and continuing through the present, Defendant violated the provisions of 29 U.S.C. § 207 by failing to pay the Plaintiffs and the Class Members overtime when they worked over forty hours in a workweek. Because of these violations, Defendant is liable to Plaintiffs for an amount equal to their unpaid overtime and minimum wage pursuant to 29 U.S.C. § 216(b).

Plaintiffs further contend that Defendant cannot establish its good faith defense pursuant to 29 U.S.C. § 260 and is therefore also liable for liquidated damages in an amount equal to unpaid overtime and unpaid minimum wages.

Additionally, Plaintiffs contend that they are entitled to a reduced burden of proof at trial because Defendant failed to keep accurate records.  *See Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-87 (1946); *see also Reeves v. International Tel. & Tel. Corp*., 616 F.2d 1342, 1351 (5th Cir. 1980), cert. denied, 449 U.S. 1077 (1981).  Plaintiffs contend that damages should be calculated based upon an estimate of the number of jobs performed per day, an estimate of the time necessary to complete the jobs, an estimate of the travel time between jobs, and any other

pre-liminary and post-liminary activities.  Further, Plaintiffs seek reimbursement for all unlawful deductions taken by Defendant from the Plaintiffs' and Class Members' wages.

Finally, Plaintiffs contend that Defendant is liable for their attorneys' fees, expenses, and court costs pursuant to 29 U.S.C. § 216(b).

**B.**     **Defendant's defenses:**  *(A defendant claiming entitlement to qualified immunity must set forth with specificity the basis of the defense.)*

Defendant contends that at all times relevant to this lawsuit that it was in complete compliance with the FLSA.  The satellite installation technicians were at all times independent contractors.  As a result, the Plaintiffs are not entitled to an hourly wage nor time and a half for overtime.  Defendant further contends that the amounts paid to these technicians was actually in excess of what they would have received on an hourly basis with overtime aid for in excess of 40 hours a week.

Defendant further contends that the interaction and oversight of the federal government during the exact same period relevant to this lawsuit affirmed the status of Stockton's independent contractors and establishes a good faith defense thereby precluding the award of any liquidated damages.

Defendant is not liable for any unpaid wages, overtime, expenses, or attorneys' fees.

**C.**     **Claims or defenses of other party:**

Not applicable.

## IV.  FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.**     **Stipulated Factual Contentions.**

The parties agree to the following facts listed separately below:

1.     Defendant Stockton Telecommunications, Inc., at all relevant times, has and continues to be an enterprise within the meaning of 29 U.S.C. § 203(r).

2.     Defendant Stockton Telecommunications, Inc., at all relevant times, has been and continues to be an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

**3.**     That this case is certified as a collective action and that testimony elicited at trial can be conducted on a representative basis.

4.     All documents produced by Defendant and Dish Network LLC constitute records of regularly conducted business activity under Federal Rule of Evidence 803(6).

5.     Defendant's technicians are an integral part of its satellite television installation business.

6.     Defendant invests substantially more in its satellite television installation business than any one technician.

7.     While the Parties disagree about the number of hours worked, they stipulate to the dates of work for the following Plaintiffs:

| Plaintiff | Start Date | End Date |
|---|---|---|
| Aldada, Mohamad | 8/1/2013 | 12/1/2013 |
| Apodaca, Michael | 8/15/2013 | 10/15/2013 |
| Berger, Loren | 7/15/2013 | current |
| Burke, Ana | 11/15/2011 | 3/20/2014 |
| Dada, Iyad | 9/12/2013 | 12/12/2013 |
| Del Carmen, Maria | 1/1/2006 | 1/1/2012 |
| El Yassir, Ghassan | 10/26/2013 | 6/15/2014 |
| Ferrell, Jimmy | 1/1/2013 | 12/1/2013 |
| Goodwin, Michael | 9/1/2013 | 2/1/2014 |
| Gorski, Matthew | 11/20/2012 | 4/6/2013 |
| Grimm, Okey | 4/1/2012 | 8/1/2012 |
| Hall, Carl | 10/1/2012 | 5/1/2013 |
| Hampshire, James | 11/14/2011 | 12/24/2012 |
| Hendren, Joshua | 10/30/2013 | 12/18/2013 |
| Holmes, Kenric | 9/1/2012 | 9/1/2013 |
| Jones, Benjamin | 8/1/2012 | 1/17/2014 |

| | | |
|---|---|---|
| Joplin, Brian | 9/1/2011 | 7/1/2012 |
| Kerr, Allen | 10/18/2012 | 5/5/2013 |
| Lee, Randall | 3/15/2012 | 12/18/2012 |
| Martin, William | 8/1/2010 | 7/1/2012 |
| Meyor, Joseph | 10/19/2013 | 2/22/2014 |
| Nutter, Thomas | 7/1/2010 | 2/1/2013 |
| Redbird, Lyle | 9/6/2013 | current |
| Ryan, William | 9/25/2013 | 1/3/2014 |
| Shehane, Kevin | 2/14/2011 | 4/10/2012 |
| Smith, Corey | 9/1/2011 | 6/6/2013 |
| Taylor, Dylan | 1/1/2011 | 8/1/2013 |
| Taylor, Michael | 8/15/2010 | 3/20/2013 |
| Tipton, Matthew | 1/15/2013 | 3/2/2014 |

**B.      Contested Material Facts.**

**1.      Plaintiff's Contentions:**

a.      Defendant is company that provides satellite television installation services for Dish Network, LLC ("Dish").

b.      Defendant operates in New Mexico, Texas, Louisiana, and Oklahoma.

c.      Defendant employs approximately 60 office workers and managers, leases nine buildings, and maintains a website for advertisement.

d.      Defendant earns approximately $6,000,000 per year from its contract with Dish.

e.      Defendant's total revenue in 2012 and 2013 was 16 to 17 million.

f.      Defendant hires satellite technicians to install satellite television products and to perform satellite installation services to customers of Defendant.

g.      These technicians are classified by Defendant as independent contractors.

h.      These technicians are not paid overtime when they work more than 40 hours per week.

i.      The technicians are paid on a piece rate basis, that is they receive a set amount for each job that they perform.

j.      The amounts that are paid for each job performed by the technicians are set by Defendant.

k.      The technicians cannot negotiate the rates or change the rates they are paid for each job.

l.      Defendant does not have any education requirements for technicians.

m.      The work performed by a technician can be learned through a few weeks of on the job training.

n.      Defendant requires its technicians arrive at a designated office each morning to receive work assignments.

o.      Defendant provides the satellite dishes, receivers, and other equipment that the technicians install.

p.      Defendant maintains an inventory of this equipment valued at approximately $500,000.

q.      The technicians, on the other hand, are only responsible for supplying a vehicle, simple hand tools, and a camera to aid Defendant to remotely inspect their work.

r.      The technicians are supervised by managers, known as Field Service Managers.

s.      These managers determine the "routes" for the technicians.

t.      The "routes" contain a list of jobs to be performed per day by each technician.

u.      The managers assign the "routes" to technicians.

v.      Technicians cannot reject the "routes."

w.      Technicians cannot reject any jobs within the "routes;" and instead, must perform each job.

x.      Technicians must complete each job within the "routes" within the time period established by Defendant.

y.      The Field Service Managers are also responsible for ensuring that technicians have all the equipment they will need to perform their installation work.

z.      Technicians must complete the jobs in the order set by Defendant.

aa.     If the technicians perform a job incorrectly or a customer complains about their work, the technicians are fined with a "chargeback."

bb.     A "chargeback" is a deduction in pay for discipline.

cc.     Defendant managers routinely go to job sites to observe the work of the technicians.

dd.     Defendant has a policy known as the "no pictures, no pay" policy.

ee.     Under this policy, a technician must submit a picture of his work.  If he fails do so, he does not receive pay for the work.

ff.      Defendant has a site survey policy.

gg.     Under the site survey policy, a technician must complete a sketch of the installation site before performing the work.

hh.     Technicians are required to wear a uniform, carry an identification badge, and place a placard on their vehicles.

ii.      The technicians were required to install the satellite television products according to the strict installation procedures of Defendant and Dish.

jj.     Technicians are the workforce without which Defendant could not provide its services.

kk.     Defendant invests substantially more towards its business than its technicians.

ll.     Thirty-three technicians have joined this case.

mm.     The average time period of working for Defendant is 542 days, or 1.4 years.

nn.     No Plaintiff worked for another company while working with Defendant.

oo.     Defendant identified the technicians as employees under its worker's compensation policy.

pp.     Plaintiff Nutter received worker's compensation benefits when he was injured on the job working for Defendant.

qq.     Defendant is responsible for the work and conduct of the technicians at its customers' homes.

rr.     Defendant's technicians do not have separate business phone lines, business emails or websites, nor do they advertise or rent office space.

**2.     Defendant's Contentions:**

a.      That the office workers, managers, buildings and web-site support Stockton's job mission of which satellite installation is only a portion of and does not comprise the majority of its work or income source.

b.      That Stockton's income from its contract with Dish network varies from year to year ranging.

c.      That in 2012 Stockton's net income after all expenses was $89,073 and in 2013 Stockton had a net loss of $993,829.

d.      Defendant contracts with satellite installation technicians to install satellite dishes and offer other services for Stockton's contractors including Dish and Direct TV.

e.      These technicians are independent contractors.

f.      Stockton is not required to pay its technicians on an hourly basis or for overtime.

g.      In 2012 Stockton was audited by both the federal Occupational Health and Safety Administration and the United States Department of Labor Wage and Hour Division.  Both audits involved a review of Stockton's independent contractor relationship and both audits confirmed that Stockton's dish installers were independent contractors.

h.      The piece rates paid to each satellite installer for a job is set in part by Stockton and in part reflects what its contractors, Dish and Direct TV will pay for a given job.

i.      Technicians can negotiate travel rates and also have the ability to negotiate directly with the installation customer for additional services.

j.      Any additional services negotiated by the satellite technician are collected by and paid directly to the installer.

k.      Installers contract directly with the customer for these services.

l.      Technicians are required to have certification as dish installers prior to doing work for Stockton and those requirements are set out in their independent contractor agreement.

m.      Educational requirements and training are provided on-line by a variety of sources.

n.      Work is given out each morning at Stockton's field offices on a first come, first serve basis.

o.      No technician is ever required to work on any given day.

p.      Satellite Dishes are provided by Dish Network or are provided to the installer by the customer who purchased the dish from Dish Network.

q.      Stockton has an inventory of equipment that installers will need to use on a job and sells that equipment to installers.

r.      Installers are free to buy their equipment from any source other than Stockton.

s.      Field Managers oversee the inventory and purchase of equipment and handle the daily allocation of work, they do not supervise Stockton's technicians in the daily performance of their work.

t.      Field Managers are also responsible for handling damage calls.

s.      Routes are determined in part by Dish and in part by Stockton's field managers.

t.      Technicians choose their routes from a list of available routes they are not assigned by a field manager.

u.      Installers can decline to work at all and can also choose days they wish to work.

v.      A technician's day ends when he has completed the jobs he agreed to perform.

w.      A field manager's job is to support the technician installers to include making sure the equipment they need is available to them.

x.      Field Mangers have no control over what order in which a technician completes his or her jobs.

y.      Chargebacks are not disciplinary measures.

z.      Chargebacks are a reflection of the cost of correcting improperly performed work or paying for damage to a customer's premises during the installation process.

aa.     Field Mangers do not routinely go to job sites to observe work.

bb.     Field managers most often go to job sites to view first-hand allegations of damage to customer property during installation.

cc.     Stockton does not enforce any no picture, no pay policy.

dd.     Stockton does not have a site survey policy.

ee.     Site surveys are performed by the technicians so as to allow him or her to determine what will need to be done on that particular job.

ff.     Stockton provides blank site survey forms.

gg.     Technicians wear hats, shirts, and display vehicle placards for the entity(ies) they perform work for.

hh.     Technicians can and do display more than one vehicle placard to include placards for their own businesses.

ii.     Technicians follow the same installation manual for assembling the satellite dish as is provided to customers who simply buy the Dish and install it themselves.

jj.     The actual placement and location of a satellite dish is not covered by any manual or instructions and is based on each particular site and set of circumstances.

kk.     Satellite technicians are allowed to and do in fact own their own businesses.

ll.     Stockton's business investment reflects more than the installation of satellite dishes.

mm.     Two of the technicians that have joined this suit did so after the deadline for opting into this lawsuit.

nn.     Over half of the class, 18 technicians, averaged only 7.5 months in duration with Stockton.

oo.     In 2013 Stockton paid its subcontractors $4,439,430.

pp.      Stockton's installation technicians are identified on its workers' compensation policy as Intercommunication Systems Installation or Repair & D.

qq.      Installation technicians are required to pay for their own worker; compensation and liability insurance.

rr.      Installation technicians that cannot or do not obtain their own worker; compensation and liability insurance polices are allowed to pay Stockton for their premium and be added as an additional insured.

**3.      Contentions of Other Party:**

Not applicable.

## V.  APPLICABLE LAW

**A.      Do the parties agree which law controls the action?**

      __X__ Yes  _____ No

**If yes, identify the applicable law:**  Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

1.      Plaintiff

2.      Defendant

3.      Other Party

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

**1.      Plaintiff**

The central contested issue of law in this case is whether the Plaintiffs are employees of Defendant under the FLSA or are independent contractors.  Plaintiffs maintain that under the

economic realities test, as construed by the Tenth Circuit, they are employees. *See Baker v. Flint Eng'g & Const. Co.,* 137 F.3d 1436 (10th Cir. 1998); *Dole v. Snell,* 875 F.2d 802 (10th Cir. 1989). As employees, Plaintiffs would enjoy the protections of the FLSA, including the entitlement to overtime and the minimum wage.

Plaintiffs also contend that as a matter of law, Defendant's violations of the FLSA were not in good faith, within the meaning of 29 U.S.C. § 260.  As such, Plaintiffs are entitled to liquidated damages.

Further, Plaintiffs contend that Defendant's violations of the FLSA were willful. Because the violations were willful, a three year statute of limitations applies to the claims of every Plaintiff in this case.

Moreover, Plaintiffs contend that Defendant failed to keep accurate records.  Thus, Plaintiffs are entitled to a reduced burden of proof based upon Defendant's failure to preserve and maintain accurate records. *See Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-87 (1946); *see also Reeves v. International Tel. & Tel. Corp*., 616 F.2d 1342, 1351 (5th Cir. 1980), cert. denied, 449 U.S. 1077 (1981).

### 2. Defendant

The Defendant maintains that under the economic realities test its independent contractors are not employees and are therefore not subject to the provisions of the Fair Labor Standards Act and Stockton was not required to pay them minimum wage or overtime compensation.

As a matter of law, Defendant's business model did not violate  the FLSA and at all times relevant to this lawsuit the Defendant acted in good faith within the meaning of 29 U.S.C. § 260. As such, Plaintiffs are not entitled to any liquidated damages.  Not only was Defendant's conduct

not a violation, but it did not act willfully in violation of the FLSA and the three-year statute of limitations does not apply to any Plaintiff in this case.

Finally, given the status of the Plaintiffs as independent contractors the Defendant kept all of the records necessary and was not required to maintain business records for the businesses of its sub-contractors.  The records Stockton kept were both complete and accurate and the Plaintiffs are not entitled to any reduced burden of proof.

    3.      Other Party

## VII.  MOTIONS

**A.**    **Pending Motions (indicate the date filed):**

    **1.**      **Plaintiff**

    a.      Plaintiffs' Motion for Adverse Inference/Spoliation Instruction, Doc. 71, filed February 16, 2015

    b.      Plaintiffs' Motion for Summary Judgment as to Employee Status, Doc. 74, filed February 27, 2015

    **2.**      **Defendant**

    a.      Defendant's Response to Motion for Spoliation Doc. 76, filed March 8, 2015.

    b.      Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment Doc. 82 Filed March 20, 2014

    3.      Other Party

**B.**    **Motions which may be filed:**

    **1.**      **Plaintiff**

    a. Reply to Plaintiffs' Motion for Summary Judgment as to Employee Status

    b. Motion to Strike/Exclude Defendant's Summary Judgment Evidence

    c.   Motion to Strike Defendant's Summary Judgment Statement of Facts

    d.   Motion in Limine

    e.   Motion for jury questionnaire

**2.**    **Defendant**

    a.   Response to Motions to Strike and to Exclude

    b.   Motion in Limine

3.    Other Party

Briefing must be complete and filed with the Court by _____.

## VIII.  DISCOVERY

**A.**    **Has discovery been completed?**  __X__ Yes  _____ No

    If no, discovery terminates on _____.

**B.**    **Are there any discovery matters of which the Court should be aware?**

    Plaintiffs contend that Defendant failed to preserve records during the course of this litigation and willfully destroyed records. Plaintiffs have requested a spoliation instruction.

## IX.  ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony.  If the testimony is by deposition, identify the deposition by page number and line number.  A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

**A.**    **Plaintiff's Witnesses:**

    1.    Plaintiff will call or have available at trial the following witnesses:

    a.    <u>Randall Lee:</u>  This witness is a former installation technician for Defendant.  He will be called to testify about his duties working for Defendant, the compensation he received

from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

b.       <u>Ghassan El Yassir</u>:  This witness is a former installation technician for Defendant. He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

2.       Plaintiff may call the following witnesses:

a.       <u>Thomas Nutter</u>:  This witness is a former installation technician for Defendant. He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

b.       <u>Lyle Redbird</u>:  This witness is a current installation technician for Defendant.  He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

c.       <u>Benjamin Jones</u>:  This witness is a former installation technician for Defendant. He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

d.       <u>James Hampshire</u>:  This witness is a former installation technician for Defendant. He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

e.      <u>Alan Kerr</u>:  This witness is a former installation technician for Defendant.  He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

f.      <u>Michael Apodaca</u>:  This witness is a former installation technician and field service manager for Defendant.  He will be called to testify about his duties working for Defendant, the compensation he received from Defendant, the amount of hours he worked, and other issues germane to his employment with Defendant.

g.      <u>Ira Kusnetz</u>:  This witness is Defendant's current Chief Operating Officer and served in this case as Defendant's Rule 30(b)(6) corporate representative.  He will be called to testify about Defendant's organization, its finances, the level of control exercised over its technicians, the amount of hours the Plaintiffs worked, how Defendant calculated the Plaintiffs' compensation, the type of work performed by the Plaintiffs, and other issues germane to the Plaintiffs' employment with Defendant.

h.      <u>Breifne Lamb</u>:  This witness is one of Defendant's branch managers and supervisor of the Plaintiffs.  He will be called to testify about the level of control exercised by Defendant over the Plaintiffs, the duties of the Plaintiffs, the organization of the Plaintiffs' daily routes, the scheduling of the Plaintiffs' work, and other issues germane to the Plaintiffs' employment with Defendant.

i.      <u>William Talab</u>:  This witness is one of Defendant's branch managers and supervisor of the Plaintiffs.  He will be called to testify about the level of control exercised by Defendant over the Plaintiffs, the duties of the Plaintiffs, the organization of the Plaintiffs' daily

routes, the scheduling of the Plaintiffs' work, and other issues germane to the Plaintiffs' employment with Defendant.

      j.    <u>Michael Ratliff</u>:   This witness is one of Defendant's branch managers and supervisor of the Plaintiffs.  He will be called to testify about the level of control exercised by Defendant over the Plaintiffs, the duties of the Plaintiffs, the organization of the Plaintiffs' daily routes, the scheduling of the Plaintiffs' work, and other issues germane to the Plaintiffs' employment with Defendant.

      k.    <u>Jorge Diaz-Druet</u>:   This witness is one of Defendant's branch managers and supervisor of the Plaintiffs.  He will be called to testify about the level of control exercised by Defendant over the Plaintiffs, the duties of the Plaintiffs, the organization of the Plaintiffs' daily routes, the scheduling of the Plaintiffs' work, and other issues germane to the Plaintiffs' employment with Defendant.

**B.**    **Defendant's Witnesses:**

      1.    Defendant will call or have available at trial the following witnesses:

      a.    <u>Ira Kusnetz</u>:    This witness is Defendant's Chief Operations Officer.  He will be called to testify as the Defendant's business model, the status of the Plaintiffs as independent contractors; the degree of control exercised over the Plaintiffs by Stockton;  the audits performed on Stockton by the federal government in 2012 that examined Stockton's business model and evaluated the status of its technicians as independent contractors; and other issues germane to the Plaintiffs' contracting status with the Defendant.

      2.    Defendant may call the following witnesses:

      a.    <u>James L. Massengale</u>:   Mr. Massengale is an investigator for the U.S. Dept. of Labor Wage & Hour Division.  He will testify as to the audit performed on Stockton, the scrutiny

of its independent contractors and the government's findings that Stockton's technicians were in fact independent contractors:

        b.    <u>Okey Grimm:</u>  A Plaintiff.  He will testify as to running his own retail business while sub-contracting for Stockton and how he used Stockton as a supplement to his business.

        c.    <u>Maria Del Carmen:</u>  A Plaintiff.  She will testify to hiring her own employees as a subcontractor for Stockton.

        d.    Any of the field managers listed in Plaintiff's list of witnesses

        e.    Any other opt-in Plaintiff within the class.

## X.  TRIAL PREPARATION

**A.    Exhibits.**

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.   The parties must file a "consolidated exhibit list identifying all exhibits that the parties have stipulated are admissible" and a "consolidated exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there are other objections" no later than **THIRTY (30)** calendar days before trial, or **MAY 15, 2015.**

For those exhibits on which a stipulation could not be reached, the offering party must file a separate "contested exhibit list" no later than **TWENTY (20)** calendar days before trial, or **MAY 26, 2015**.  Each party's contested exhibit list must be filed on the date identified in the preceding paragraph.  All exhibits must be marked before trial.   Exhibits must be marked numerically and identify the party offering the exhibit.  The identification number or letter will remain the same whether the exhibit is admitted or not.

**B.    Witness Lists.**

Each party's witness list must be filed with the Clerk and served on all parties by **TWENTY (20)** calendar days before trial, or **MAY 26, 2015**.  Indicate whether the witness is testifying by deposition or in person.  Objections to use of deposition testimony are due within fourteen (14) calendar days of service of the witness list.  The objecting party must mark those portions of the requested deposition testimony to which the party objects.  Marking must comply with D.N.M.LR-Civ. 10.6.  The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing at least **FIVE (5)** calendar days before trial, or **JUNE 10, 2015**.

**C.**     **Voir Dire.**

1.      If allowed, do the parties wish to participate in voir dire?

Plaintiff                    __X__ Yes _____ No

Defendant                __X__ Yes _____ No

2.      Each party wishing to participate in voir dire must serve on all parties and file with the Clerk a pleading entitled "Proposed Voir Dire Questions."  The pleading must identify the specific areas about which the party wishes to inquire and must set forth proposed voir dire questions.  This request must be filed at least **SEVEN (7)** calendar days prior to jury selection, or **JUNE 8, 2015**.

**D.**     **Jury Instructions and Verdict.**

**1.**      **In General.**  The parties must confer about proposed jury instructions.  The Court will prepare and provide the parties with a Court-proposed set of general "stock" instructions that will be given.  The stock instructions are available from the Court's web site.  The instructions that the parties must submit to the Court will be those which set

forth the elements and definitions of the claims or charges, and the elements and any definitions of any defenses.

2.      **Sources for Instructions.**  If pattern instructions are followed by the judge, the judge will indicate at the pretrial conference his or her preference for the source of instruction.

3.      **Submission of Proposed Instructions.**  The parties must submit one mutually approved set of jury instructions no later than **THIRTY (30)** calendar days before trial, or **MAY 15, 2015**.  For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

4.      **Form of Instructions.**

       a.      Submit sets of double-spaced instructions as follows:

       ___ set(s) of originals without citations and headed "Instruction No. ___"; and

       ___ set(s) with citations and numbered accordingly, one of which will be filed.

       b.      If requested, also submit all instructions in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

       c.      Submit no more than one instruction to a page.

       d.      All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.

       e.      Submit a cover sheet on all sets of instructions.

5.      **Deadlines for Submitting Instructions**.

       a.      Instructions shall be filed **THIRTY (30)** calendar days before trial, or

**MAY 15, 2015**.

       b.      Supplemental unanticipated jury instructions may be submitted at trial.

**E.**    **Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will

be read to the jury panel during jury selection.  The statement must be submitted to the Court

**TWENTY (20)** days before jury selection, or **MAY 26, 2015**.

**F.**    **Submission for Bench Trials.**

No applicable.

## XI. OTHER MATTERS

**A.**    **Settlement Possibilities.**

1.    The possibility of settlement in this case is considered:

___X___ Poor _____ Fair _____ Good _____ Excellent _____ Unknown

2.    Do the parties have a settlement conference set with the assigned Magistrate

Judge?

_____ Yes ___X___ No   If yes, when? _____

If a settlement conference has already been held, indicate approximate date:

October 16, 2014.

Would a follow-up settlement conference be beneficial?     _____ Yes   ___X___ No

3.    Does either party wish to explore any alternatives for dispute resolution such as

mediation or a summary jury trial?

If yes, please identify: _____

If no, explain why not: <u>While the parties will continue settlement discussion, they believe they have exhausted all reasonable avenues for resolution.</u>

**B.      Length of Trial and Trial Setting.**

1.      This action is a      _____ Bench Trial   __X___ Jury Trial   _____ Both

2.      The case is set for trial on a trailing docket beginning <u>June 15, 2015.</u>

3.      The estimated length of trial is   ___4_____ day(s).

<u>**XII. EXCEPTIONS**</u>

<u>**XIII. MODIFICATIONS-INTERPRETATION**</u>

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

<u>/s/ Don J. Foty</u>
*Attorney for Plaintiffs*

711 W. Alabama St.
Houston, Texas 77006

_____
Address

<u>/s/ Mark Weitz</u>
*Attorney for Defendant*

100 Congress Avenue, Suite 2000
Austin, Texas  78701

_____
Address

Dated: **May 5, 2015**

_____
UNITED STATES DISTRICT JUDGE