IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDALL LEE and OKEY GRIMM,
On Behalf of Themselves and All Others
Similarly Situated,

    Plaintiffs,

        v.                          13-CV-01219-KG-SCY

STOCKTON TELECOMMUNICATIONS, INC.

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment as to Employee Status (Partial Motion for Summary Judgment), filed on February 27, 2015. (Doc. 74). On March 20, 2015, Defendant filed a response to the Motion for Summary Judgment. (Doc. 82). On May 1, 2014, Plaintiffs filed a reply. (Doc. 101). Having reviewed the Partial Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court denies Plaintiffs' Partial Motion for Summary Judgment.

*I.*     *Plaintiffs' Original Complaint — Collective Action Summary (Doc. 1)*

Plaintiffs Randall Lee and Okey Grimm, on behalf of themselves and all other persons similarly situated, brought suit under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–19. Plaintiffs contend that Defendant misclassified them as "independent contractors" when they were in reality "employees" of Defendant. Because of this alleged misclassification, Plaintiffs assert Defendant failed to pay Plaintiffs minimum wages and overtime in violation of Sections 206 and 207, respectively, of the FLSA. Under the FLSA, Plaintiffs seek recovery of unpaid minimum wages and overtime compensation.

Plaintiffs now move for partial summary judgment on the issue of whether Plaintiffs are employees under the FLSA. Defendant opposes the Partial Motion for Summary Judgment in its entirety.

II.     *Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

III.    *Discussion*

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. 29 U.S.C. §§ 206-07. An independent contractor cannot maintain a claim under the FLSA. *Johnson v. Unified Gov't of Wyandotte Cnty/Kan. City, Kan.*,

371 F.3d 723, 727 (10th Cir. 2004).

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "[I]n determining whether an individual is covered by the FLSA, our inquiry is not limited by any contractual terminology or traditional common law concepts of employee or independent contractor." *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (internal quotation and citation omitted). Courts employ an economic realities test which focuses on "whether the individual is economically dependent on the business to which he renders service, or is, as a matter of economic fact, in business for himself." *Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984) (citation omitted). Courts generally consider six factors in applying the economic realities test.[1] These include:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is integral part of the alleged employer's business.

*Baker*, 137 F.3d at 1440. "None of the factors alone is dispositive; instead the court must employ a totality-of-the-circumstances approach." *Id.* at 1441. The Court must first make factual findings as to the individual's work and then apply those facts to the six factors of the economic realities test. *Id.* at 1440. The ultimate question as to whether an individual acted as an employee or independent contractor is a matter of law. *Id.* at 1441.

A. *Degree of Control*

Plaintiffs contend Defendant exercised direct control over Plaintiffs by managing when, where, and how Plaintiffs performed their duties. Plaintiffs first claim that they were required to

---

[1] Plaintiffs proffer seven factors under the economic realities test. *See* (Doc. 74) at 14-27. With respect to the seventh factor, Plaintiffs claim Defendant labeled Plaintiffs as "employees" under its worker's compensation insurance policy. *Id.* at 27. The Court will not consider the seventh factor in its analysis of the economic realities test because Plaintiffs failed to cite authority. *See* D.N.M.LR-Civ. 7.3(a) and 56.1(b).

appear at designated offices between 6:30 a.m. and 7:15 a.m. to receive installation routes.  (Doc. 74-1) at 197 (Mr. Kusnetz depo. at 197:5-14); (Docs. 74-2 to 74-15 at ¶ 4).  Plaintiffs could not reject an assigned route or negotiate the route.  (Docs. 74-2 to 74-15 at ¶ 5).  Further, Plaintiffs were required to complete jobs in the order assigned to the route and within an allotted time period.  *Id.*  Next, Plaintiffs assert Defendant controlled their work by requiring Plaintiffs to install satellites in accord with Defendant's installation procedures.  (Doc. 74-1) at 206-07 (Mr. Kusnetz depo. at 206:11-207:5); (Docs. 74-2 to 74-15 at ¶ 10).  Plaintiffs also state Defendant monitored their work by conducting site visits and inspections.  (Doc. 74-1) at 178-79 (Mr. Kusnetz depo. at 178-79); (Docs. 74-2 to 74-15 at ¶ 12).  Defendant further required Plaintiffs to wear uniforms, badges, and place placards on their work vehicles.  (Doc. 74-1) at 159 (Mr. Kusnetz depo. at 159:13-23); (Docs. 74-2 to 74-15 at ¶ 11).

Moreover, Plaintiffs argue Defendant's strict policies asserted control over Plaintiffs' potential income.  First, Plaintiffs claim Defendant established non-negotiable pay rates for each installation.  (Doc. 74-1) at 138, 158 (Mr. Kusnetz depo. at 138:12-14, 158:7-10).  Second, Defendant would reduce a pay rate in the form of a "chargeback" if Plaintiffs' installation failed to meet Defendant's standards.[2]  *Id.* at 181-83 (Mr. Kusnetz depo. at 181:2-12, 182:16-23, 183:10-185:17).  Third, Defendant instituted a "no pictures, no pay" policy that required Plaintiffs to submit pictures of their completed work in order to receive compensation.  (Docs. 74-2 to 74-15 at ¶ 11).  Finally, Plaintiffs were required to submit a site survey with each installation, which included a sketch of the installation.  (Doc. 74-1) at 294 (Mr. Kusnetz depo. at 294:9-23).

An independent contractor, typically, acts "autonomously, or with some degree of

---

[2]  A "chargeback" occurs when Defendant must pay a second technician to fix or repair an issue that the original technician did not resolve.  (Doc. 82-1) at 183 (Mr. Kusnetz depo. at 183).

independence which [sets him/her] apart from what one could consider normal employee status." *Dole v. Snell*, 875 F.2d 802, 806 (10th Cir. 1989).  The relevant question is whether the independence exercised by these Plaintiffs is characteristic of someone in business for himself. *Id.* at 808.  Courts, generally, find an individual to be an employee when the work is regimented with respect to time, place, quality, and the manner in which he/she performs labor.  *Id.* (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 32 (1961) (finding employee status when workers regimented under one organization, manufactured what organization desired, and received compensation organization dictated)).

      The record, viewed in the light most favorable to Defendant, demonstrates that a reasonable jury could find that Plaintiffs acted with some degree of independence that sets them apart from employee status.  First, Defendant's company representative, Mr. Ira Kusnetz (Mr. Kusnetz), testified that Defendant's field service managers organized jobs within the routes based on geographical proximity.  (Doc. 82-1) at 110 (Mr. Kusnetz depo. at 110:1-5).  Plaintiffs then selected routes on a "first come, first serve" basis.  *Id.* at 192 (Mr. Kusnetz depo. at 192:11-22).  The field service managers did not distribute or designate routes unless the route was designated for a "remote technician" who worked in a remote geographic location.[3]  *Id.* at 127, 192-93 (Mr. Kusnetz depo. at 127:1-10, 192:11-193:4).

      Second, the evidence demonstrates that it was in Plaintiffs' discretion to decide when and how to select a route; Plaintiffs could select routes online or in person at Defendant's offices on a weekly or daily basis.  *Id.* at 92-93, 127, 193 (Mr. Kusnetz depo. at 92:24-93:17, 127:1-12, 193:1-2).  Additionally, Plaintiffs could accept or reject the available routes.  *Id.* at 128-29, 193, 270 (Mr. Kusnetz depo. at 128:7-16, 129:1-3, 193:4-6, 270:20-21).  Further, it was in Plaintiffs'

---

[3] Mr. Kusnetz testified, nonetheless, that "it's advantageous" for a field service manager "to only route the best techs that they have."  (Doc. 82-1) at 193 (Mr. Kusnetz depo. at 193:11-12).  It is unclear if this statement means the field service manager would require particular technicians to take certain routes.

discretion to complete all of installations assigned to the route.  *Id.* at 129 (Mr. Kusnetz depo. at 129:4-11).  Defendant did not monitor Plaintiffs' daily routes or activities.  *Id.* at 38, 175-76 (Mr. Kusnetz depo. at 38:3-13, 175:24-176:10).  Defendant also had no knowledge about when Plaintiffs completed a job unless Plaintiffs logged into the ETA, the satellite providers' routing system, and marked the job completed.  *Id.* at 239 (Mr. Kusnetz depo. at 239:3-25).  This usually occurred at the end of the day, not after each job.  *Id.* (Mr. Kusnetz depo. at 239:19-25).

Third, the record contains additional indicia that Plaintiffs acted with some degree of independence during an installation job.  For instance, Defendant did not provide on-site or direct supervision.  *Id.* at 213 (Mr. Kusnetz depo. at 123:12-22).  In fact, Plaintiffs bared the responsibility of completing an installation in compliance with the satellite providers' procedure manuals.  *Id.* at 213, 335-36 (Mr. Kusnetz depo. at 213:9-25, 335:25-336:1-5).  Defendant did not instruct Plaintiffs on how to complete the installation.  *Id.*  If a problem materialized during an installation or service, Plaintiffs had the option of troubleshooting online or calling field service managers to determine if there were systematic problems with the satellite providers' system.  *Id.* at 237 (Mr. Kusnetz depo. at 237:7-14, 17-22).

Fourth, although the record contains evidence Defendant required Plaintiffs to wear uniforms and identification badges while working, *see* (Doc. 101-4), the record also indicates the uniform or badge correlated to the satellite provider the technician represented at the time of service.  (Doc. 82-1) at 158 (Mr. Kusnetz depo. at 158:13-23).  For example, if the technician provided services for Dish Network the technician would wear a Dish Network uniform and place a Dish Network placard on his/her car.  *Id.*  Likewise, if the technician provided retail services for Defendant, then Plaintiff would wear a badge with Defendant's logo.  *Id.* at 158-60 (Mr. Kusnetz depo. at 158:24-160:10).  Thus, Plaintiffs would change their uniform,

identification badge, or vehicle placard according to the company they represented at the time of the installation.  Notably, it is in Plaintiffs' discretion to provide services for a particular satellite provider or sell retail services for Defendant.  *Id.* at 160, 207-08, 320-22 (Mr. Kusnetz depo. at 160:11-17, 207:22-208:1, 320:20-321:2, 322:5-11).

Fifth, the record further demonstrates Defendant exercised minimal control over Plaintiffs' pay rates.  *See* discussion *infra* Part III.B.  It is evident from the record that Plaintiffs' rates were set on a rate card provided by the satellite providers, not Defendant.  (Doc. 82-1) at 157-58 (Mr. Kusnetz depo. at 157:21-158:6).  Plaintiffs could negotiate rates with Defendant.  *Id.* at 158 (Mr. Kusnetz depo. at 158:7-20).  Additionally, some satellite providers and Defendant incentivized geographically remote routes with higher rates.  *Id.* at 138, 159 (Mr. Kusnetz depo. at 138:12-24, 159:6-9).

Moreover, the record contains evidence that Plaintiffs acted with some degree of independence with regard to potential income.  *See* discussion *infra* Part III.B.  As an example, Mr. Kusnetz testified that Plaintiffs may negotiate costs for ancillary services like "mirroring, TVs, additional wall drops, doing pole mounts, burying cable" and bill customers directly.  (Doc. 82-1) at 139-40 (Mr. Kusnetz depo. at 139:7-19, 140:1-25).

The record demonstrates, however, that Defendant did exercise some control over Plaintiffs, including quality control.  *Id.* at 213 (Mr. Kusnetz depo. at 213:23-25).  Indeed, Defendant conducted site visits after a technician completed a job; site visits, generally, occurred when either the technician was new or a customer filed a complaint.  *Id.* at 113-14, 178, 206 (Mr. Kusnetz depo. at 113:20-114:2, 178:17-22, 206:21-22).  Furthermore, if a customer complaint identified issues with Plaintiffs' work, Defendant contacted the original technician to fix the issue, provided the original technician feedback, or would send another technician to repair the

problem and, under some circumstances, Defendant applied a "chargeback" to the original technician's pay. *Id.* at 98, 178-79, 371 (Mr. Kusnetz depo. at 98:5-13, 178:17-179:5, 371:2-17). Nonetheless, whether Defendant applied a "chargeback" depended on the circumstance. If the original technician repaired the problem, no "chargeback" was assessed. *Id.* at 116-17, 182 (Mr. Kusnetz depo. at 116:24-117:6, 182:13-19). If a satellite provider charged Defendant for any problems or repairs caused by the technician, Defendant passed those charges through to Plaintiffs. *Id.* at 181-83 (Mr. Kusnetz depo. at 181:2-12, 182:16-19, 182:24-183:3). And Defendant had discretion to assess "chargebacks" or absorb the expense. *Id.* at 181-82 (Mr. Kusnetz depo. at 181:2-12, 182:7-15, 20-23).

Finally, with respect to Defendant's site survey and "no pictures, no pay" policies, the evidence shows that the policies existed. *See id.* at 294-95 (Mr. Kusnetz depo. at 294:9-17, 295:22-25); (Doc. 101-5). The record, nevertheless, demonstrates a genuine dispute as to whether Defendant enforced the policies and how much control Defendant exerted as a consequence of the policies. (Doc. 82-1) at 214, 279-80, 360 (Mr. Kusnetz depo. at 214:1-20, 279:2-24, 280:9-12, 360:5-25).

Accordingly, the Court finds there is a genuine dispute of material fact as to whether Defendant exercised sufficient control over Plaintiffs or if Plaintiffs enjoyed a level of autonomy or independence which sent them apart from normal employee status.

  *B. Opportunity for Profit or Loss*

Plaintiffs assert that this factor weighs in favor of finding Plaintiffs employees because Plaintiffs were paid on a piece rate basis established by Defendant. (Doc. 74-1) at 138, 158-59 (Mr. Kusnetz depo. at 138:12-14, 158:7-159:1); (Docs. 74-2 to 74-15). Moreover, Plaintiffs could not control the number of jobs they performed; and Plaintiffs had no input in Defendant's

8

management of the business.  (Doc. 74-1) at 109, 126, 128 (Mr. Kusnetz depo. at 109:15-25, 126:18-25, 128:7-10); (Docs. 74-2 to 74-15 at ¶¶ 4-7, 16).

Generally, an independent contractor undertakes the risks of profit and loss associated with an independent business.  *Dole*, 875 F.2d at 810.  An opportunity for profit or loss exists where an individual may bid on jobs and set his own schedule.  *Baker*, 137 F.3d at 1441.  For purposes of employment status under the FLSA, however, the mere fact that a defendant paid a plaintiff on piecework basis does not create an opportunity for profit or loss.  *Dole*, 875 F.2d at 809.

Here, a reasonable jury could find that Plaintiffs undertook the risks of loss and profits associated with an independent business.  As addressed *supra*, Plaintiffs' rates are set on a rate card provided by the satellite provider.  (Doc. 82-1) at 157-58 (Mr. Kusnetz depo. at 157:21-158:6).  Plaintiffs could and have negotiated rates.  *Id.* at 158 (Mr. Kusnetz depo. at 158:7-20).  Additionally, some satellite providers and Defendant incentivized geographically remote routes with higher rates.  *Id.* at 138, 159 (Mr. Kusnetz depo. at 138:12-24, 159:6-9).

The record contains additional indicia that Plaintiffs acted as independent contractors by controlling their profits and losses.  As discussed *supra*, there is evidence that it was at Plaintiffs' discretion as to when to review potential routes, whether to accept or reject the routes, and in what manner or time-frame to complete the routes.  *Id.* at 92-93, 127-29, 140-41, 193, 270 (Mr. Kusnetz depo. at 92:24-93:17, 127:1-12, 128:7-16, 129:1-3, 140:14-141:11, 193:4-6, 270:20-21).

Furthermore, the record shows that it was at Plaintiffs' discretion to increase profits by providing ancillary services and negotiating the costs directly with customers.  *Id.* at 139-40 (Mr. Kusnetz depo. at 139:7-19, 140:1-25).  Some Plaintiffs also provided retail services and sold additional products like internet.  *Id.* at 140 (Mr. Kusnetz depo. at 140:6-13).  Notably,

9

Defendant did not require Plaintiffs to report ancillary services; and Plaintiffs kept all profits from ancillary services. *Id.* at 140-41 (Mr. Kusnetz depo. at 140:14-141:11).

Based on the record, the Court finds there is a genuine dispute of material fact as to whether Plaintiffs undertook the risks of loss and profits usually associated with an independent business.

*C. Investment in Business*

Plaintiffs argue this factor weighs in favor of finding they are employees because their investment in Defendant's business was minimal in comparison to Defendant's expenditures. Plaintiffs assert that their expenses were limited to necessary materials, tools, and a vehicle. (Doc. 74-1) at 186-87 (Mr. Kusnetz depo. at 186:11-22, 187:5-19). Defendant, on the other hand, operates in four states, leases nine buildings, employs approximately 60 office workers, and maintains a website. *Id.* at 92, 94-95, 340 (Mr. Kusnetz depo. at 92:8-16, 94:21-95:8, 340:1-17).

The comparison of a worker's individual investment to the employer's investment in the overall operation helps to distinguish between employees and independent contractors. *Baker*, 137 F.3d at 1442. Under this factor, the Court considers "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Dole*, 875 F.2d at 810. Generally, the fact that a worker supplies his own tools does not preclude a finding of employee status. *Id.*

Here, neither party submitted evidence with respect to either parties' capital expenditures in the residential satellite installation business. The record indicates that Defendant purchased offices in four states, maintains nine buildings, employs approximately sixty office employees,

and maintains an online presence.[4] (Doc. 82-1) 92, 94-95, 340 (Mr. Kusnetz depo. at 92:8-16, 94:21-95:8, 340:1-17). The record, however, does not clearly demonstrate if any of the aforementioned pertains exclusively to Defendant's residential satellite installation business. It is feasible that Defendant's above investments are allocated to Defendant's commercial contracts and sales divisions, which Mr. Kusnetz testified consist of a substantial portion of Defendant's business. *Id.* at 27-28 (Mr. Kusnetz depo. at 27:11-16, 20-25, 28:1-6). It is a plausible conjecture, nonetheless, that Defendant's investments in its offices, staff, and online presence bolstered its overall operation. Mere speculation or conjecture, however, carries no weight in summary judgment proceedings. *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). The Court, therefore, finds there is a genuine dispute as to Plaintiffs' investment in Defendant's business because Plaintiffs failed to produce sufficient evidence from which a reasonably jury could find Defendant's investment in the residential satellite installation business exceeded Plaintiffs' investment.

### D. Permanence of Working Relationship

Plaintiffs aver the average work tenure for the thirty-three class members is 542 days or approximately 1.4 years. (Doc. 74) at 11 ¶ 39, 25. The Court will not consider this asserted fact in its analysis because Plaintiffs failed to cite to the particular portion of the record in support of the asserted fact. *See* D.N.M.LR–Civ. 56.1(b). Plaintiffs further argue that none of the Plaintiffs worked for other satellite installation companies while working for Defendant. (Doc. 74-1) at 334 (Mr. Kusnetz depo. at 334:15-23).

---

[4] Plaintiffs contend Defendant maintains $500,000 of Dish Network inventory on hand. (Doc. 74) at 23. Plaintiffs' citation to the record does not support this contention. Accordingly, the Court will not consider this asserted fact in its analysis. *See* D.N.M.LR-Civ. 56.1(b) (movant for summary judgment "refer with particularity to those portions of the record upon which the movant relies"); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (the Court is not required to comb through the record for evidence in support of a motion for summary judgment).

In response, Defendant failed to cite to the record as mandated in Fed. R. Civ. P. 56(c)(1)(A) and D.N.M.LR-Civ. 56.1(b). A movant's asserted facts are deemed undisputed if a non-movant fails to cite to the record with particularity. *See Smith v. E. N.M. Med. Ctr.*, 72 F.3d 138, at *4 (10th Cir. 1995); D.N.M.LR-Civ. 56.1(b). Therefore, the Court finds Plaintiffs' asserted fact that none of the Plaintiffs worked for other satellite installation companies during their employment with Defendant undisputed. Consequently, there is no genuine dispute as to this undisputed fact and, accordingly, this factor weighs in favor of finding Plaintiffs are employees. *See Dole*, 875 F.2d at 811 (finding employees usually work for only one employer).

   *E. Degree of Skill*

Plaintiffs contend satellite installation primarily consists of manual labor and requires very little skill. (Doc. 74-1) at 194-95 (Mr. Kusnetz depo. at 194:20-195:2). In addition, there is no formal education requirement for technician work. *Id.* at 330 (Mr. Kusnetz depo. at 330:2-16).

A requirement of specialized skill is indicative of independent contractor status. *See Dole*, 875 F.2d at 811 (lack of specialized skill requirement indicates employee status). "[T]he use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." *Baker*, 137 F.3d at 1443 (internal quotation omitted).

The record clearly demonstrates that the satellite technician position does not require formal education. (Doc. 82-1) at 318 (Mr. Kusnetz depo. at 318:13-15). The record does, however, contain evidence that Plaintiffs' positions required specialized training and certification. For instance, DirecTV required installers to pass an exam and receive a certification before a technician could offer DirecTV services. *Id.* at 177, 207-08, 320-22 (Mr.

Kusnetz depo. at 177:5-12, 207:22-208:1, 320:20-322:21). Similarly, Dish Network required technicians to obtain certifications and complete training prior to receiving work from Dish Network. *Id.* Plaintiffs utilized this special training to complete installations without supervision, educate the customer, and offer ancillary services independent from their contract with Defendant. *Id.* at 111, 139-40, 206-08, 213, 279, 294, 335-36 (Mr. Kusnetz depo. at 111:12-17, 139:7-19, 140:1-25, 206:21-208:13, 213:9-25, 279:2-11, 294:9-23, 335:25-336:1-5).

Viewing the record in the light most favorable to Defendant, the Court finds a genuine issue of material fact as to whether Plaintiffs exercised the specialized skill of an independent contractor.

### F. Integral Part of Business

Plaintiffs claim Mr. Kusnetz testified Plaintiffs were integral to Defendant's residential satellite installation business. (Doc. 74-1) at 342-43 (Mr. Kusnetz depo. at 342:25-343:10).

In determining employee status under the FLSA, the Court considers whether the type of work which Plaintiffs performed is an integral part of Defendant's business. *Dole*, 875 F.2d at 811. The Court further presumes that with respect to vital or integral parts of the business, an "employer will prefer to engage an employee rather than an independent contractor." *Baker v. Barnard Const. Co. Inc.*, 860 F. Supp. 766, 777 (D.N.M. 1994) (internal quotation and citation omitted).

The record contains evidence that Mr. Kusnetz conceded that Plaintiffs are integral to Defendant's residential satellite installation business. As addressed earlier, however, the record also demonstrates that Defendant's satellite installation business is a small fraction of Defendant's overall business. (Doc. 82-1) at 27 (Mr. Kusnetz depo. at 27:11-13). Indeed, Defendant's business is comprised of several divisions, including, commercial, broadband,

power plant work, central office work, and residential services. *Id.* at 27-28 (Mr. Kusnetz depo. at 27:11-16, 20-25, 28:1-6).  On this record, the Court finds that Plaintiffs are an integral part of Defendant's residential installation business.  The Court, nevertheless, does not find this factor very helpful in determining Plaintiffs' status under the FLSA because Plaintiffs have not cited any evidence that Plaintiffs work was integral to Defendant's aggregate business.

A trier of fact, viewing the evidence in light most favorable to Defendant, could make findings as to five factors of the economic realities test which would support the legal conclusion that Plaintiffs acted as independent contractors, rather than employees.  As a result, Plaintiffs are not entitled to judgment as a matter of law.  *Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996) (controverted evidence as to factors of economic realities test precludes summary judgment because trier of fact must consider totality of circumstances).

IT IS, THEREFORE, ORDERED that Plaintiffs' Motion for Summary Judgment as to Employee Status, (Doc. 74) is DENIED.

_____
UNITED STATES DISTRICT JUDGE