IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RANDAL LEE and OKEY GRIMM,
on Behalf of Themselves and All Others
Similarly Situated,

       Plaintiffs,

vs.                                                                Civ. No. 13-1219 KG/LF

STOCKTON TELECOMMUNICATIONS, INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Stockton Telecommunications, Inc.'s Motion to Set Aside Default Judgment (Motion to Set Aside), filed on November 25, 2015. (Doc. 126). Plaintiffs filed a response on December 9, 2015, opposing the Motion to Set Aside and, in the alternative, seeking an award of reasonable attorneys' fees and costs incurred as a result of the Court's entry of default judgment against Defendant. (Doc. 129). Defendant filed a reply on December 22, 2015. (Doc. 131).

Having reviewed the Motion to Set Aside and the accompanying briefing, the Court (1) grants the Motion to Set Aside, (2) grants Plaintiffs' request for an award of reasonable attorneys' fees and costs, and (3) denies as moot Plaintiffs' Motion for Entry of Final Judgment (Doc. 123), Defendant's Emergency Motion to Stay the Proceedings (Doc. 125), and Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment and in the Alternative Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment (Doc. 137).

*A. Background*

    *1. Procedural History*

On September 10, 2015, the Court allowed Defendant's counsel to withdraw their representation of Defendant. (Doc. 117). In doing so, the Court ordered Defendant to obtain substitute counsel within 30 days. *Id.* Defendant was aware that failing to obtain substitute counsel could result in a default judgment or appropriate sanctions. (Doc. 116). Defendant did not obtain substitute counsel as ordered by the Court, so the Court entered a default judgment in Plaintiffs' favor and against Defendant as to liability on all of Plaintiffs' claims against Defendant. (Doc. 119). After holding a telephonic status conference at which only Plaintiffs' counsel appeared,[1] the Court ordered that Plaintiffs file a damages brief by November 12, 2015, and that any responsive briefing be filed by November 30, 2015. (Doc. 122).

On November 12, 2015, Plaintiffs filed their damages brief in the form of Plaintiffs' Motion for Entry of Final Judgment. (Doc. 123). Then, on November 24, 2015, Defendant's substituted counsel entered appearances in this case. (Doc. 124). The next day, Defendant filed the Motion to Set Aside. Plaintiffs oppose the Motion to Set Aside and, in the alternative, ask Defendant to pay reasonable attorneys' fees and costs Plaintiffs incurred as a result of the default judgment. (Doc. 129) at 8. Should it prevail on the Motion to Set Aside, Defendant has, in fact, offered "to pay for the reasonable and necessary attorney fees incurred by Plaintiffs in preparing the motion for entry of final judgment." (Doc. 131) at 5.

The same day Defendant filed the Motion to Set Aside, Defendant also filed an Emergency Motion to Stay the Proceedings seeking 60 days to respond to Plaintiffs' Motion for Entry of Final Judgment. (Doc. 125). Defendant actually filed that response on January 25,

---

[1] The Court sent notice of the status conference to Defendant's former counsel. (Doc. 120).

2016, within the requested 60 day period of time. (Doc. 136). On February 11, 2016, Plaintiffs filed a motion to strike that response which, in the alterative, is a reply to the response. (Doc. 137). All of the aforementioned motions are now fully briefed. The Court addresses the Motion to Set Aside first because a decision on that motion affects the viability of the above post-default judgment motions.

*2. Defendant's Efforts to Obtain Substitute Counsel*

Defendant's Chief Operations Officer, Ron Stockton, submitted a sworn affidavit describing his attempts to obtain counsel within the 30 day period ordered by the Court. (Doc. 126-1). After the Court ordered Defendant to obtain substitute counsel, Stockton met with attorneys at Miller Stratvert, P.A. *Id.* at ¶ 6. Stockton believed that after his meeting with those attorneys Defendant had established an attorney-client relationship with Miller Stratvert, P.A. *Id.* at ¶ 8. On October 1, 2015, Miller Stratvert P.A. emailed Stockton a request for additional information to formalize the attorney-client relationship. *Id.* at ¶ 9; Oct. 1, 2015, email (Doc. 126-2). Apparently, that email went to Stockton's "junk mail inbox," so he did not read it when it was sent. (Doc. 126-1) at ¶ 9.

On October 15, 2015, Defendant's former attorney informed Stockton that the Court had entered a default judgment against Defendant. *Id.* at ¶ 11. Stockton then contacted Miller Stratvert, P.A. which informed him that the firm needed a $35,000 retainer in order to represent Defendant. *Id.* at ¶ 12. Stockton attempted for several weeks to raise the retainer amount, but could not. *Id.* at ¶ 13.

On November 17, 2015, Stockton contacted Defendant's present counsel and then retained them to represent Defendant in this lawsuit. *Id.* A week later, Defendant's new counsel

3

entered appearances in this case. Stockton notes that other than this litigation he has not been involved in litigation and is "not knowledgeable about how litigation works." *Id.* at ¶ 3.

B. Discussion

    *1. Standard for Setting Aside Default Judgments*

It is well-established that "default judgments are not favored by courts." *Katzson Bros., Inc. v. U.S.E.P.A.,* 839 F.2d 1396, 1399 (10th Cir.1988). A decision on the merits is the preferred resolution of a legal claim. *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268, 1272 (10th Cir.2001) (quoting *Gocolay v. N.M. Fed. Sav. & Loan Ass'n,* 968 F.2d 1017, 1021 (10th Cir. 1992)). Courts should entertain default judgments "only when the adversary process has been halted because of an essentially unresponsive party." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.,* 715 F.2d 1442, 1444 (10th Cir. 1983) (quoting *Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980)).

Federal Rule of Civil Procedure 55(c) states that courts "may set aside a final default judgment under Rule 60(b)." Here, Defendant seeks to set aside the default judgment under Rule 60(b)(1) on the basis of excusable neglect. The Rule 60(b)(1) movant has the burden "to plead and *prove* excusable neglect." *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir.1990) (emphasis in original). "[W]hat constitutes excusable neglect is generally an equitable [determination, which takes] into account the totality of the circumstances surrounding the party's omission." *Sloss Indus. Corp. v. Eurisol,* 488 F.3d 922, 934 (11th Cir. 2007). *See also Pelican Prod. Corp.,* 893 F.2d at 1146 (Tenth Circuit looks at entire record "to see if the trial judge clearly ignored excusable conduct or failed to recognize some other compelling reason for [Rule 60(b)] relief to be granted."). The Court resolves all doubts in making the Rule 60(b)(1)

determination in favor of the party seeking relief.  *Cessna Fin. Corp.,* 715 F.2d at 1445 (citing *Jackson,* 636 F.2d at 836).

In the Tenth Circuit, courts must make three determinations to set aside a default judgment under Rule 60(b):  "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment." *United States v. Timbers Preserve., Routt County, Colo.*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States,* 517 U.S. 820, 825 (1996).  The culpability inquiry is the threshold question; "if the moving party fails to make this showing, the Court need not consider evidence regarding … a lack of prejudice to the non-moving party or the presence of a meritorious defense." *Simmons v. Ohio Civil Serv. Emp. Assoc.,* 259 F.Supp.2d 677, 685 (S.D. Ohio 2003) (citing *Mfs' Indus. Relations Ass'n. v. East Akron Casting Co.,* 58 F.3d 204, 206 (6th Cir.1995)).  The culpability requirement is generally met "if the party defaulted willfully or has no excuse for the default." *Timbers Preserve,* 999 F.2d at 454.

If a court decides to grant a motion to set aside a default judgment, the court may, in its discretion, impose conditions such as requiring the movant to pay reasonable attorney's fees and costs incurred by the non-movant in obtaining the default judgment and in responding to the motion to set aside the default judgment. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2700 (2010) (prejudice caused by "additional expense" can be "eased by requiring the defaulting party to ... pay court costs"); *Littlefield v. Walt Flanagan & Co.,* 498 F.2d 1133, 1136 (10th Cir.1974) ("The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead.").

*2. Whether to Set Aside the Default Judgment*

Plaintiffs assert that any communication lapses between Stockton and Miller Stratvert, P.A. do not constitute excusable neglect and that, therefore, Defendant's culpable conduct caused the default judgment. Plaintiffs cite several cases to support their argument.

Plaintiffs cite first *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42 (7th Cir. 1994). The Seventh Circuit, in that case, generally stated that "[m]ere lack of communication" between an attorney and client "does not excuse compliance with the rules, or from the penalties for failing to do so." *Id.* at 45. In *Pretzel & Stouffer, Chartered*, the defaulting party, represented by counsel, failed to file an answer to the complaint and finally did so after the court entered a default. *Id.* Even so, the defaulting party did not move for leave to file the answer, failed to provide a copy of the answer to opposing counsel, and failed to appear at a status hearing without a "valid excuse." *Id.* The Seventh Circuit concluded that these failures constituted nothing more than "routine back-office problems." *Id.* at 46. The Seventh Circuit further concluded that those failures along with the communication problems did not constitute good cause for defaulting. *Id.*

*Pretzel & Stouffer, Chartered*, however, is distinguishable from this case. In *Pretzel & Stouffer, Chartered*, the defaulting party's legal counsel failed to comply with the rules and orders while, in this case, Stockton, a non-lawyer, failed to obtain counsel within the 30-day period. *Pretzel & Stouffer, Chartered* is, therefore, not particularly persuasive.

Next, Plaintiffs cite *Landau v. Cosmetic & Reconstructive Surgery Ctr., Inc.*, 158 F.R.D. 117 (N.D. Ill. 1994). In *Landau*, the defaulting party claimed that due to a miscommunication with his former counsel he believed that his former attorney continued to represent him and that the attorney would file an answer to the complaint, which the attorney did not do. *Id.* at 118-19.

6

The court, however, concluded that "the default was not caused simply by miscommunication." *Id.* at 119.  The court observed that (1) from the outset the former counsel made it clear to both opposing counsel and the court that he would not be filing an answer; (2) it was "highly unlikely" that the former counsel would "inform[] opposing counsel of his limited role in the case but failed to notify his client;" (3) it was, therefore, not credible that the defaulting party could claim that he believed the former counsel continued to represent him and would file an answer; and (4) the defaulting party "personally informed opposing counsel that he would accept a default order and merely contest damages."  *Id.*  Under those circumstances, the court determined that the defaulting party "cannot now change his tack and file an answer to the complaint."  *Id.*

As with *Pretzel & Stouffer, Chartered*, *Landau* is distinguishable from this case.  First, unlike *Landau* where the court found the defaulting party to not be credible, there is no evidence to suggest that Stockton did not in good faith try to retain substitute counsel within the court-ordered 30-day period.  Second, unlike *Landau*, Defendant has consistently contested the default judgment and Plaintiffs' claim of damages.  Thus, *Landau* also is not very persuasive.

Next, Plaintiffs cite *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202 (7th Cir. 1984).  In that case, there was "a lack of communication and cooperation" between the attorney and clients which led to discovery requests going unanswered and to the withdrawal of that attorney from the case.  *Id.* at 1207.  The communication and cooperation issues, however, did not cause the default because the attorney had already withdrawn from the case when the discovery responses were due.  *Id.*  Moreover, the defaulting parties had access to another attorney and were not diligent in attempting to obtain more time to respond to the discovery.  *Id.* at 1208.  In addition, the defaulting parties "did not move promptly to vacate the

default judgment." *Id.* The Seventh Circuit noted that, "While we recognize that laypersons should not be expected to possess the legal sophistication of lawyers, this is not an excuse for the appellants' inaction in this case." *Id.*

The Seventh Circuit also noted that a factor missing from this case was a good faith gesture by the defaulting parties "to pay for the plaintiff's attorney's fees and other costs due to the delay" setting aside the default judgment would cause. *Id.* Finally, the Seventh Circuit stated

> that because a default judgment is a harsh sanction and a trial on the merits is preferred, there arises some question as to whether the district court should have entered the default judgment without first applying other sanctions against the appellants, such as an assessment of attorneys' fees. Particularly where, as here, there has been no finding of perjury or other fraud on the court, less severe sanctions may be sufficiently effective in alerting an irresponsible litigant to the seriousness of his or her neglect, protecting the interests of the other litigants in the case, and vindicating the integrity of the court.

*Id.* at 1209.

As with the other two cases, *C.K.S. Engineers, Inc.* does not necessarily support Plaintiffs' argument that Stockton acted in a culpable manner. Unlike in *C.K.S. Engineers, Inc.*, Stockton acted diligently when he attempted to secure counsel for Defendant, and, once he retained counsel, counsel timely filed the Motion to Set Aside as well as the motion to extend the time to file a response to Plaintiffs' Motion for Entry of Final Judgment, which Plaintiffs filed within the requested time period. Also, unlike *C.K.S. Engineers, Inc.*, Stockton did not have other counsel he could rely on for advice. Considering Stockton's lack of legal knowledge, as the Seventh Circuit noted, laypersons like Stockton "should not be expected to possess the legal sophistication of lawyers…." Additionally, in contrast to *C.K.S. Engineers, Inc.*, Defendant has made a good faith gesture to pay reasonable attorney's fees and costs. Finally, because Plaintiffs do not allege perjury or fraud on the Court, and in keeping with the preference of trying cases on

the merits, the Court should follow the Seventh Circuit's directive to consider a lesser sanction than default judgment such as an award of reasonable attorney's fees and costs.

Plaintiffs also cite a case from this District, *Felts v. Accredited Collection Agency, Inc.*, 267 F.R.D. 377 (D.N.M. 2010), *aff'd,* 406 Fed. Appx. 309 (10th Cir. 2011). In *Felts*, the defaulting parties contended that they failed to answer the complaint because they mistakenly believed an attorney, Mr. Breslin, was representing them. *Id.* at 380. The court relied on a number of factors in deciding not to set aside the default judgment. First, the court noted that the defaulting parties were aware of the case and were "not unsophisticated litigants" as one defaulting party was an attorney. *Id.* at 381. Second, the court determined

> [i]t was not reasonable for [the defaulting parties] to believe that Breslin was going to represent their interest in the matter, especially after they were notified that Breslin had not, in fact, answered the Amended Complaint. It appears that Breslin did not indicate to [the defaulting parties] that he was handling the matter. There is no showing that [the defaulting parties] made any inquiry of Breslin about the status of the case at any time.

*Id.* Third, even if a misunderstanding existed between the defaulting parties and Breslin, that misunderstanding would have ended when the defaulting parties received notice of the motion for default judgment. *Id.* Nonetheless, the defaulting parties did not initiate proceedings to set aside the default judgment until "more than 6 months after the default judgment was filed." *Id.* The court concluded that "[t]here was no excuse for [the defaulting parties] allowing the default to occur and waiting so long to set it aside." *Id.* Again, unlike Stockton, the defaulting parties in *Felts* had litigation experience, knew about the inaction leading to the default, and did not act diligently to prevent the default and to set aside the default judgment. Consequently, *Felts* is not particularly helpful to Plaintiffs.

Lastly, Plaintiffs cite *Pelican*, a Tenth Circuit case. In *Pelican*, the court entered a default judgment because the defaulting party's attorney had not responded to dispostitive

9

motions. 893 F.2d at 1144. The defaulting party argued in its motion to set aside the default judgment that it lacked any communications from its attorney on the matter and that it was not aware of the default judgment until nearly a month after it was entered. *Id.* at 1144-45. The defaulting party, however, had in-house legal staff with knowledge of the lawsuit from its inception. *Id.* at 1477.

The Tenth Circuit reiterated the general law that "[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)" and that parties "generally do not acquit themselves of responsibility by showing merely that they placed the case in the hands of an attorney." *Id.* at 1146 (citations omitted). The Tenth Circuit then rejected the defaulting party's Rule 60(b)(1) "communications gap" argument because the defaulting party failed "to produce any affidavit from its former attorney, either voluntarily given or compelled by subpoena, as to the attorney's explanation for the failure to answer the motion to dismiss." *Id.* The Tenth Circuit emphasized that the defaulting party must "show good cause for the default before it will be set aside" and that "a most obvious void exists where a party claims that its counsel's activities were not its own, but fails to demonstrate to the court any effort to produce an explanation from its former counsel for his conduct." *Id.* at 1147. The Tenth Circuit, therefore, found no abuse of discretion by the trial court when it denied Rule 60(b)(1) relief. *Id.*

The Tenth Circuit also examined the defaulting party's Rule 60(b)(6) argument to set aside the default judgment "for any other reason justifying relief from the operation of the judgment." *Id.* Courts can award Rule 60(b)(6) relief in extraordinary cases. *Id.* The Tenth Circuit rejected the Rule 60(b)(6) argument because this was not a case involving "an uneducated appellant, unaccustomed to litigation" and that the case was actually "disposed of *with* notice to counsel and *with* legal authority." *Id.* Hence, the Tenth Circuit concluded that

there was "simply nothing which offends justice about the denial of a motion to set aside a default judgment where the moving party, through counsel, has failed to comply with the procedural rules of the court," especially since the defaulting party had in-house legal staff "who were at least on constructive notice, since they had initiated the lawsuit…." *Id.*

Likewise, *Pelican* is distinguishable from this case on the facts. The defaulting party in *Pelican* had in-house legal staff and thus could be considered knowledgeable of legal matters and to have constructive notice of the proceedings in the lawsuit. In this case, Defendant does not have in-house legal staff and Stockton is, otherwise, not knowledgeable of legal matters.

Moreover, although the Tenth Circuit in *Pelican* remarked that mere carelessness and placing oneself in the hands of an attorney are not enough to support excusable neglect, the Tenth Circuit did not dismiss the possibility that a "communications gap" might provide excusable neglect. Instead, the Tenth Circuit stated that it could not ignore the fact that the defaulting party did not produce any affidavit from its former attorney to explain his failure to respond to a motion to dismiss. Although Defendant, in this case, did not provide an affidavit from Miller Stratvert, P.A., it is clear from Stockton's affidavit and the Miller Stratvert, P.A. email that Stockton believed he had retained Miller Stratvert, P.A. when, in fact, he had not. This misunderstanding explains Defendant's failure to obtain counsel within the 30-day period. Furthermore, the Tenth Circuit left open the possibility that Rule 60(b)(6) relief could be available to a party who lacks legal knowledge such as Stockton. *Pelican* is, therefore, not entirely supportive of Plaintiffs' argument that Defendant is culpable for the default judgment.

The Court now applies the three *Timbers Preserve* factors for setting aside a default judgment. First, the Court does not find that Defendant willfully defaulted or that it lacked an excuse for the default. Consequently, Defendant did not cause the default judgment through any

culpable conduct.  Second, Plaintiffs do not dispute that Defendant has a meritorious defense.  In fact, the Court finds that in denying Plaintiffs' motion for summary judgment the Court necessarily concluded that Defendant has a meritorious defense.  *See* (Doc. 109).  Third, Plaintiffs will not be prejudiced by setting aside the default judgment.  The Court observes that the delay in setting aside the judgment has not been substantial.  In addition, to minimize any prejudice to Plaintiffs, the Court will award reasonable attorneys' fees and costs to Plaintiffs for their efforts related to the entry of the default judgment and setting aside the default judgment.

      Resolving all doubts in favor of Defendant and considering the totality of the record, the Court concludes that Defendant has proven that the *Timber Preserve* factors support relief under Rule 60(b)(1).  Furthermore, the preference for determining cases on the merits and the fact that Defendant was not essentially non-responsive favor setting aside the default judgment.  For all of the above reasons, the Court grants the Motion to Set Aside.

      Because the Court will set aside the default judgment, the Court also denies as moot Plaintiffs' Motion for Entry of Final Judgment (Doc. 123), Defendant's Emergency Motion to Stay the Proceedings (Doc. 125), and Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment and in the Alternative Plaintiffs Reply to Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment (Doc. 137).

      IT IS ORDERED that

      1.  Defendant Stockton Telecommunications, Inc.'s Motion to Set Aside Default Judgment (Doc. 126) is granted;

      2. the Default Judgment Against Stockton Telecommunications, Inc. (Doc. 119) is set aside and vacated;

3. Plaintiffs' Motion for Entry of Final Judgment (Doc. 123), Defendant's Emergency Motion to Stay the Proceedings (Doc. 125), and Plaintiffs' Motion to Strike Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment and in the Alternative Plaintiffs Reply to Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment (Doc. 137) are denied as moot;

4. Plaintiffs' request for reasonable attorneys' fees and costs incurred in connection with the entry of the default judgment and setting aside the default judgment is granted;

5. Plaintiffs must file a motion for those attorneys' fees and costs no later than 14 days from the entry of this Memorandum Opinion and Order;

6. Defendant has 14 days from the date of the filing of the motion for attorneys' fees and costs to file a response;

7. Plaintiffs have 14 days from the date of the filing of that response to file a reply; and

8. the motion for attorneys' fees and costs and the related briefing must otherwise comply with the Local Rules as well as the Federal Rules of Civil Procedure.

_____
UNITED STATES DISTRICT JUDGE